UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANTHONY G. DILWORTH and                             :
PATRICIA DILWORTH,
                                                    :
                                                    :
             Plaintiffs,                            :    MEMORANDUM AND ORDER
                                                    :
        -v.-
                                                    :    10 Civ. 2224 (JMF) (GWG)
                                                    :
RANDY GOLDBERG, M.D., et al.,                       :

             Defendants.                            :
-----------------------------------------------------------------X
                                                    :
JAMES R. BOWEN,
                                                    :
             Plaintiff,
                                                    :    11 Civ. 4799 (JMF) (GWG)
        -v.-
                                                    :

CAPT. ROBERT PATRICK, et al.,                       :

             Defendants.                            :
                                                    :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

   Plaintiffs Anthony Dilworth and James Bowen have moved for sanctions against

defendant Westchester County alleging spoliation.[1]   Spoliation is "the destruction or significant

---

[1] See Notice of Motion, filed Dec. 6, 2013 (Docket # 399); Declaration in Support of Plaintiffs' Joint Motion for Sanctions, filed Dec. 6, 2013 (Docket # 400) ("Deem Decl."); Affidavit of Plaintiff Anthony G. Dilworth in Support of Motion for Sanctions, filed Dec. 7, 2013 (Docket # 401) ("Dilworth Aff."); Affidavit of Plaintiff James Bowen in Support of Motion for Sanctions, filed Dec. 7, 2013 (Docket # 402) ("Bowen Aff."); Declaration of Robert Sanderson, filed Dec. 7, 2013 (Docket # 403) ("Sanderson Decl."); Joint Memorandum of Law in Support of Plaintiffs' Motion for Sanctions, filed Dec. 7, 2013 (Docket # 404) ("Pl. Mem.");

1

alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (quotation marks omitted)). A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence. Byrnie, 243 F.3d at 108; Passlogix, Inc. v. 2FA Technology, LLC, 708 F. Supp.2d 378, 412 (S.D.N.Y. 2010). These elements are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (citing Byrnie, 243 F.3d at 107–12). In their memorandum of law in support of the motion for sanctions, the plaintiffs assert that defendant Westchester County has committed spoliation in three respects: (1) it failed to preserve "Capital Project Plans" that would have shown the

---

Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Sanctions, filed Dec. 31, 2013 (Docket # 426) ("Def. Mem."); Declaration of Darius P. Chafizadeh in Opposition to Plaintiffs' Motion Seeking Sanctions, filed Dec. 13, 2013 (Docket # 427) ("Chafizadeh Decl."); Declaration of Adam Rodriguez in Opposition to Plaintiffs' Motion for Sanctions, filed Dec. 31, 2013 (Docket # 428) ("Rodriguez Decl."); Declaration of Christopher Smith, filed Dec. 31, 2013 (Docket # 429) ("Smith Decl.").

  After the plaintiffs filed their motion, the Court granted plaintiffs' request to file supplemental papers. See Memorandum Endorsement, dated Feb. 18, 2014 (Docket # 450). The plaintiffs filed a supplemental letter and a number of exhibits, in response to which the defendant elected to rest on the arguments contained in its original opposition papers. See Plaintiffs' Supplemental Submission, filed Feb. 23, 2014 (Docket # 451); Letter from Darius P. Chafizadeh, filed Feb. 28, 2014 (Docket # 456). The supplemental submission appears to raise some new spoliation claims. We do not consider such claims because they were not part of the original motion with respect to which permission to supplement was granted. In addition, the claims are asserted in a conclusory manner without any discussion of the applicable legal principles.

location of surveillance cameras in the J2 housing area where incidents involving both Bowen and Dilworth allegedly occurred; (2) it failed to preserve videos from one or more surveillance cameras in J2 that would have depicted an alleged beating of Bowen by Captain Patrick; and (3) it failed to preserve logbooks for "A Block" that would have shown that Dilworth was forced to leave his cell and go to a different building to receive his pain medication. See Pl. Mem. at 11.

The third claim raised in the plaintiffs' original motion appears to be moot in light of a letter submitted by the defendant to the Court and to plaintiffs' counsel. See Letter from Darius P. Chafizadeh, filed Feb. 28, 2014 (Docket # 458). The defendant states in the letter that it had previously been "unable to locate the A Block Log Book" covering a portion of the time Dilworth was housed there, but "[u]pon further investigation by County personnel . . . the A Block Log Book . . . was located obviating the need for the Court to address such issue on Plaintiffs' motion" as these materials would be "made available for inspection by Plaintiffs' counsel." Id. Thus, we address only the first two aspects of the spoliation motion.[2]

Capital Project Plans

The plaintiffs argue that "Capital Project Plans" would show the existence of surveillance cameras that took video recordings of incidents involving both plaintiffs and that such plans have been destroyed. Pl. Mem. at 11. The plaintiffs point to various pieces of circumstantial evidence that they contend support this assertion. For example, they point to certain statements made by Sergeant (now Captain) Christopher Smith, of the Department of Corrections Technical Services Unit, during his March 29, 2013 deposition. Pl. Mem. at 4. The plaintiffs' notice of

---

[2] The Court assumes the plaintiffs agree that the claim for spoliation sanctions as related to the A Block Log Book is now moot. If this is not the case, they may reinstate this portion of their motion by a letter within 7 days of the date of this decision.

deposition contained a request that he bring to his deposition any documents concerning the installation of surveillance video cameras in the jail, particularly in the housing area.[3]  See Notice to Take Deposition, dated Mar. 28, 2013 (annexed as Ex. 4 to Deem Decl.).  During the deposition, Sgt. Smith stated that he was not sure if capital project plans would indicate the installation locations of surveillance cameras in the jail, but that they might indicate such locations, and that the Department of Public Works might have these plans.  See Transcript of Deposition of Christopher Smith, dated Mar. 29, 2013 (annexed as Ex. 5 to Deem Decl.), at 27, 51, 52.  The plaintiffs state that his deposition was adjourned because he failed or refused to bring the requested documents.  Pl. Mem. at 4.  The plaintiffs also point to Sgt. Smith's statement on June 6, 2013, during his continued deposition, that he had "drawn in" by hand various cameras on the plans he brought with him and that the plans he brought "could be plans for a hundred different projects that might have taken place."  See Transcript of Continued Deposition of Christopher Smith, dated June 6, 2013 (annexed as Ex. 10 to Deem Decl.), at 51, 61.  Additionally, the plaintiffs proffer an affidavit from Robert Sanderson, an expert in forensic video analysis.  Mr. Sanderson's affidavit states that it is "customary for [a] system installer to provide an 'as built' floor plan detailing camera placement, point of view and visual area effectively recorded."  Sanderson Decl. ¶ 7.b.

In response, the defendant states that it produced plans that indicate the locations of the surveillance cameras in the jail during Sgt. Smith's June 6, 2013 deposition.  Def. Mem. at 2, 9.  The defendant also references its October 7, 2013 letter to the Court, submitted in response to

---

[3]  The Court notes that while Fed. R. Civ. P. 45(a)(1)(C) contemplates a document request being made to a non-party in conjunction with a subpoena for deposition testimony, it is Fed. R. Civ. P. 34 — not Rule 30 or Rule 45 — that provides the procedure for document requests to parties.

4

the Court's October 3 directive to defense counsel to determine whether any further plans exist that would show the location of video cameras in the jail. See Chafizadeh Decl. ¶ 26. In the October 7 letter, the defendant explained that Sgt. Smith had "further reviewed the records on file with the Technical Services Unit and consulted with the . . . Department of Public Works . . . [and] determine[d] that no other plans exist which would provide a further depiction of the location of where video cameras were located [in the facility]." Letter from Darius P. Chafizadeh, dated Oct. 7, 2013 (annexed as Ex. D to Chafizadeh Decl.), at 1.

"[T]he spoliation doctrine is predicated on evidence actually existing and being destroyed." Khaldei v. Kaspiev, 2013 WL 4016497, at *5 (S.D.N.Y. Aug. 7, 2013) (quoting Orbit One Commc'ns v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y. 2010) (internal quotation marks omitted)). Thus, "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed . . . ." Farella v. City of New York, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007) (emphasis in original). In this case, the plaintiffs have failed to show by competent evidence that "Capital Project Plans" showing the location of cameras ever existed. The only evidence proffered in support of this claim consists of ambiguous statements made by Sgt. Smith and the speculative expert opinion of Robert Sanderson. With respect to Mr. Sanderson's opinion that it is customary for a system installer to provide an "as built" floor plan detailing camera placement, this assertion does not show that such plans in fact existed for the Westchester County Jail, and thus does nothing to fulfill the plaintiffs' burden on this motion. In the end, this aspect of the plaintiffs' motion for spoliation sanctions rests on pure speculation about the existence of these plans. Case law is clear, however, that "speculative assertions as to the existence of documents do not suffice to sustain a motion for spoliation of evidence." Tri–County Motors, Inc. v. Am. Suzuki Motor

Corp., 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) (citations omitted); see also Khaldei, 2013 WL 4016497, at *5 ("[B]ecause plaintiff's argument that there has been any actual loss of evidence relevant to the claims or defenses in this case amounts to pure speculation, it is insufficient to sustain a motion for spoliation sanctions.") (citation omitted).

Moreover, even if we could find that such plans existed, there is no evidence at all that the plans were destroyed with a culpable state of mind. Nor is there any evidence on the timing of such destruction, and thus there can be no finding that there was an obligation to preserve it at the time it was purportedly destroyed.

Video from Other Cameras in J2

The plaintiffs claim that the defendant has failed to preserve videos from one or more surveillance cameras in the J2 housing area that would have depicted Captain Patrick beating Bowen. Pl. Mem. at 11. This assertion is premised on Bowen's contention that there was an additional video camera at a location in the housing area, aside from the camera that captured video of the incident that the plaintiffs already have. In support of their contention that there must be another camera that captured the incident, the plaintiffs once again proffer the opinion of their expert. Sanderson asserts that "[c]onsidering the correctional setting and typical installation features of professional surveillance systems, numerous other cameras should have been strategically placed in the dormitory [by the facility] and would likely have captured the incident involving Mr. Bowen with greater substance and clarity." Sanderson Decl. ¶ 8 (emphasis added). This statement is obviously speculative and cannot support a finding that there was such a camera.

The plaintiffs have also proffered documents labeled "affidavits" from Dilworth and

Bowen.[4] Bowen asserts that he has reviewed the video of the incident. Bowen Aff. ¶ 3. He notes that the video depicting him falling out of his bunk bed was from a surveillance camera on the wall farthest away from his bed but that "[t]here was another camera closer to [his] bed that should have captured the incident with much greater clarity and detail." Id. Dilworth's statement contains a virtually identical allegation. See Dilworth Aff. ¶ 3. Missing from the record, however, is any evidence — other than the plaintiffs' speculation about what they believe the cameras "should have captured" — of what range of view this camera covered. Also missing is any evidence that the camera the inmates observed was actually operational on the day in question. Notably, the plaintiffs' statements are contradicted by Sgt. Smith's sworn deposition testimony that no other cameras depicted the alleged incident. See Def. Mem. at 3.[5] In the end, the evidence supplied on this motion is simply insufficient for the Court to conclude that plaintiffs have met their burden of showing by a preponderance of the evidence that there once existed videotape of the incident in question from another camera.

Finally, the plaintiffs' brief describes a course of events that took place during Mr. Dilworth's deposition that plaintiffs' counsel believes provides proof that the sought-after video exists and has been wrongfully withheld or destroyed. According to the brief, plaintiffs' counsel stepped out of Mr. Dilworth's July 25, 2013 deposition to take a phone call during the defense's questioning of Mr. Dilworth about the beating of Mr. Bowen. Mr. Dilworth then stepped outside

---

[4] These "affidavits" are not notarized and do not comply with the requirements of 28 U.S.C. § 1746.

[5] This recounting of Sgt. Smith's deposition testimony is based on a statement made by defendant in its opposition papers. While the defendant did not cite to the page of the deposition where this is stated, the Court assumes that the defendant's recounting is accurate inasmuch as the plaintiffs did not reply to the defendant's submission.

a few moments later and informed his lawyer that after the lawyer left, one of the defendant's lawyers turned to another of the defendant's lawyers and said "Have you seen this" as he positioned a laptop for the second lawyer to view. Mr. Dilworth told his attorney that the second lawyer's eyes then opened wide and a look of shock came over him. According to plaintiffs' counsel, when the deposition continued, the second lawyer's questions were much more pointed. See Pl. Mem. at 7. Plaintiffs' counsel surmises that the defendant's attorneys were viewing an undisclosed video of the Bowen incident during the break from Mr. Dilworth's deposition. Pl. Mem. at 8. This conclusion, however, requires an inferential leap that go so far beyond the reasonable as to border on the fanciful. It makes little sense that counsel would bring to a deposition a video that they were deliberately withholding — let alone play the video on a laptop in a room where the opposing party was present. Also, the reaction viewed by Mr. Dilworth was capable of a myriad of explanations having nothing to do with undisclosed video.[6] Finally, the evidence on this question consists entirely of hearsay from plaintiffs' counsel contained in an unsworn memorandum of law. Notably, the defendant's attorneys have submitted affidavits stating that at no time, including during Mr. Dilworth's deposition, did either of them view video footage of the alleged beating of Mr. Bowen. Chafizadeh Decl. ¶¶ 37-38; Rodriguez Decl. ¶¶ 2-4. As a result, these allegations too do not permit any findings that would support a spoliation sanction.[7]

---

[6] The Court recognizes that the plaintiffs have provided an unrebutted chronology of events that would seem inconsistent with the explanation provided to the court by defendant's counsel of what they were viewing. See Pl. Mem. at 9. Nonetheless, the plaintiffs' version of events remain entirely speculative.

[7] The plaintiffs' motion papers also complain about the defendant's failure to provide video from the male visitor's area in September 2009. Pl. Mem. at 14. The defendant has responded that it is producing the requested information and has also provided an explanation as

Conclusion

In sum, the plaintiffs' motion for spoliation sanctions (Docket # 399) is denied.

SO ORDERED.

Dated: March 14, 2014
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

to why they previously informed plaintiffs' counsel that such video did not exist. See Def. Mem. at 1 n.2; Smith Decl. The plaintiffs' memorandum states that the defendant's misrepresentation "violated Rule 37," Pl. Mem. at 14, but they do not explain what sanction they seek or even cite any case law regarding Fed. R. Civ. P. 37. The plaintiffs have elected not to reply to the defendant's opposition papers in which the explanation for the failure to produce the video earlier was provided. Accordingly, the Court will not issue a sanction against the defendant for this alleged misrepresentation or for the failure to produce.

On an entirely separate point, the defendant seeks sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(B). Def. Mem. at 16-17. This motion is denied as it fails to comply with Local Civil Rule 7.1. Moreover, it is not clear to the Court that the plaintiffs' motion arose under Rule 37 — notwithstanding plaintiffs' assertions to the contrary in their motion papers. While a spoliation motion certainly arises under Rule 37 where there is a claim of the violation of a court order, in other situations a spoliation motion calls upon the inherent powers of a court. See generally Residential Funding Corp., 306 F.3d at 106-07 ("[I]n the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."). Accordingly, the Court will not award sanctions under Fed. R. Civ. P. 37(a)(5)(B).

9