UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                            :
ANTHONY G. DILWORTH et al.,                                 :
                                                            :
                              Plaintiffs,                   :
                                                            :
              -v-                                           :
                                                            :
RANDY A. GOLDBERG, M.D. et al.,                             :
                                                            :
                              Defendants.                   :
                                                            :
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  08/01/2014

10-CV-2224 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Anthony Dilworth ("Plaintiff" or "Dilworth") and his wife, Patricia Dilworth, bring this action against Westchester County, the Westchester County Health Care Corporation ("WCHCC"), and over fifty employees of the Westchester County Department of Correction. The allegations in the sprawling complaint relate primarily to Dilworth's detention at the Westchester County Jail (the "WCJ") from October 2008 to September 2009. The operative Complaint asserts sixteen causes of action, most of which are brought pursuant to Title 42, United States Code, Section 1983 against various combinations of Defendants. (Docket No. 340).[1] Defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules

---

[1]    Specifically, the operative Complaint asserts the following causes of action: (1) "§ 1983 Claim for Denial of Medical Care"; (2) "§ 1983 Claim for Race Motivated Denial of Medical Treatment"; (3) "§ 1983 Claim for the Use of Excessive Force"; (4) "§ 1983 Claim for Failure to Intercede in the Use of Excessive Force"; (5) "§ 1983 Claim for Violation of the Right to Privacy Guaranteed by the Ninth Amendment"; (6) "§ 1983 Claim for Denying and Placing Substantial Burdens on Religious Exercise"; (7) "§ 1983 Claim for Unconstitutional Conditions of Confinement"; (8) "§ 1983 Claim for Intentional Racial Discrimination"; (9) "§ 1983 Claim for Supervisory Liability"; (10) "§ 1983 Claim for Violation of First Amendment Rights"; (11) "§ 1983 Claim for Violation of Fourth and Fourteenth Amendment Rights"; (12) "§ 1983 *Monell* Claim Against Westchester County and WCHCC"; (13) "Pendent Claim for Negligence"; (14) "Pendent Claim for Medical Negligence"; (15) "Pendent Claim for Breach of

of Civil Procedure.  (Docket No. 440).  Also before the Court are Plaintiff's objections to certain

discovery rulings made by Magistrate Judge Gabriel W. Gorenstein, to whom this case is

referred for general pretrial purposes.  (Docket Nos. 423, 53).  For the reasons stated below,

Defendants' motion for summary judgment is GRANTED except as to one claim against one

Defendant, and Plaintiff's objections to Magistrate Judge Gorenstein's rulings are rejected.

## SUMMARY JUDGMENT MATERIALS

Before recounting the facts of this case, the Court must first address a threshold issue

regarding the materials upon which the Court may rely in resolving this motion for summary

judgment.  As a general matter, when ruling on a motion for summary judgment, the Court "may

rely only on admissible evidence."  *Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) (per

curiam) (internal quotation marks omitted).  It is axiomatic that such evidence does not include

the allegations in an ordinary complaint; instead, parties must cite to "competent, admissible

evidence," which may include affidavits, deposition transcripts, or other documents.  *See*

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004); *see*

*also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); *Esposito*

*v. Quatinez*, No. 09-CV-421 (DRH), 2014 WL 842766, at *2 (E.D.N.Y. Mar. 5, 2014).  At the

same time, a verified complaint "is to be treated as an affidavit for summary judgment purposes,

and therefore will be considered in determining whether material issues of fact exist, provided

that it meets the other requirements for an affidavit."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Cir. 1995); *see also* Fed. R. Civ. P. 56(c)(4) (providing that an affidavit "must be made on

---

Contract"; and (16) "Pendent Claim for Loss of Consortium."  (Docket No. 340, 75-83).  Most
causes of action are brought only on behalf of Plaintiff Dilworth; only Counts 8 and 16 refer to
Patricia Dilworth in any meaningful way.  (*See* Docket No. 340, ¶¶ 208, 237).

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

In this case, Plaintiff argues that the Court should accept the allegations in the operative Complaint as true for purposes of the present motion because Dilworth "verified the pending complaint."  (Pl.'s Mem. Law. Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n Mem.") (Docket No. 462) 2).  Where an affidavit is unsworn, however, it must comply with the requirements of Title 28, United States Code, Section 1746, *see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65 (2d Cir. 1999), which requires, among other things, the signature of the affiant, *see* 28 U.S.C. § 1746; *see also, e.g.*, *Silverman v. Miranda*, 918 F. Supp. 2d 200, 218 (S.D.N.Y. 2013) ("In substance, [Section 1746] mandates that a declaration executed within the United States certify that the contents is (1) true and correct; (2) offered under penalty of perjury; (3) dated; and (4) *signed*." (emphasis added)).  Here, the unsworn "verified complaint" is not signed, and the Court therefore cannot rely on it in resolving the instant motion.  The complaint contains the character "/s" in lieu of the signatures of Plaintiff and Patricia Dilworth, but that character may substitute as a signature only for an *attorney* filing a document via the Electronic Case Filing system.  *See* SDNY Electronic Case Filing Rules & Instructions § 13.14 ("The filing attorney may sign a document using a digital image of his or her signature or by placing an "s/" before his or her typed name."), *available at* http://www.nysd.uscourts.gov /ecf/ECF%20Rules%20Revision%20031714.pdf; *see also Silverman*, 918 F. Supp. 2d at 218 n.18 (declining to consider declarations submitted by non-attorneys in opposition to a motion for summary judgment where the declarations contained the character "/s/" in lieu of an actual signature).  "Signatures for all other persons (clients, witnesses, etc.) must be scanned in order to

capture the actual ink signature."  SDNY Electronic Case Filing Rules & Instructions § 13.14.

Accordingly, the Court will not accept as true the allegations in the operative Complaint.[2]

## FACTUAL BACKGROUND

The following summary of the facts, therefore, is based only on admissible evidence —

primarily, Plaintiff's deposition testimony and other documents submitted by Defendants — and

not on the operative Complaint.  Plaintiff was arrested in July 2008 "for narcotics," and

subsequently detained at the WCJ.  (Statement Material Facts Pursuant Local Rule 56.1

Submitted Supp. Defs.' Mot. Summ. J. ("Defs.' Rule 56.1 Statement") (Docket No. 441), Ex. Q

("Dilworth Dep.") 20:8-16).  He was released from the WCJ at some point between July and

October 2008, but in early October 2008, he was arrested again, and brought back to the WCJ.

(Dilworth Dep. 20:18-21:5; 22:22-25).  Plaintiff was released from the WCJ at some point in

September 2009.  (Dilworth Dep. 32:19-23).

Plaintiff's allegations largely center around an accident that occurred on December 16,

2008.  On that day, Plaintiff slipped and fell while walking down a hallway in the WCJ.  (*Id.*

48:2-24).  He testified that, as a result of the fall, he suffered "severe pain" in his head, back, and

legs.  (Dilworth Dep. 49:9-11).  Video captured by the WCJ's surveillance camera on the date in

question shows that Plaintiff was proceeding down a corridor at approximately 1:06 p.m., and

that he slipped and fell at 1:06:50.  (Defs.' Rule 56.1 Statement, Ex. R).  Plaintiff remained on

the floor for approximately fifteen seconds, at which point an inmate who had been buffing the

floor nearby approached Plaintiff and helped him to his feet.  (*Id.*).  Plaintiff then rested by

---

[2]      Dilworth, who is represented by counsel, was informed of the signature defect on March
26, 2014, when Defendants raised the issue in their reply memorandum of law (Docket No. 471,
4-5), but has made no attempt to remedy it.  Patricia Dilworth, who is now proceeding *pro se*,
was also notified of the defect by virtue of the reply memorandum (which was served on her at
the address she provided the Court), but has neither sought to remedy the signature defect nor
opposed the motion for summary judgment.

leaning against a wall for approximately a minute and a half, during which time a group of fifteen inmates and two prison officials walked past him.  (*Id.*).  Plaintiff did not attempt to interact with either of the prison officials.  (*Id.*).  Instead, Plaintiff walked away from the scene, under his own power and without any visible signs of injury, at 1:09 p.m.  (*Id.*).

The day of the fall, Plaintiff was seen twice by medical personnel at the WCJ medical facility, where he was given an ice compress, analgesic balm, and Motrin.  (Defs.' Rule 56.1 Statement ¶ 72; *id.*, Ex. T, at HB000015; 177, 179; Ex. S, at HB002095; Anthony Dilworth's Response to Defs.' Rule 56.1 Statement & Counterstatement ("Pl.'s Rule 56.1 Statement") (Docket No. 460) ¶ 72).[3]  The following day, he was also examined by Dr. Randy Goldberg, a physician at the WCJ.  (Dilworth Dep. 97:18-99:5; 103:2-14).  Plaintiff received an X-ray of his back on December 22, 2008, and an MRI approximately two months later.  (Dilworth Dep. 104:19-107:19; 112:4-24; HB00000013; 206-210).  From December 16, 2008, to the date of Plaintiff's release from the WCJ, Plaintiff was seen by WCJ medical personnel on approximately forty-seven occasions, including multiple examinations by Dr. Goldberg.  (Defs.' Rule 56.1 Statement ¶¶ 71-78; Pl.'s Rule 56.1 Statement ¶¶ 71-78; *see also generally* Defs.' Rule 56.1 Statement, Exs. S, T).

Plaintiff also testified at his deposition about a number of incidents unrelated to his medical treatment that took place during his detention at WCJ.  Specifically, he testified that he was prevented from going to church services (Dilworth Dep. 194:19-199:18), that his Bible and other personal effects were taken from him (*id.* at 178:19-179:7; 226:7-22), that he was required

---

[3]      Exhibits S, T, and Z were properly redacted, as they comprised Plaintiff's private medical records.  *See, e.g.*, *Wheeler-Whichard v. Doe*, No. 10-CV-0358S (DGL), 2010 WL 3395288, at *7 (W.D.N.Y. Aug. 25, 2010) (noting that courts routinely file medical records under seal).  The Clerk of the Court is directed to maintain the unredacted records under seal.

to stand naked in his cell for periods of fifteen to twenty minutes at a time (*id.* at 172:11-172:12), and that officers would sometimes press their elbows into his back (*id.* at 174:4-7).

In addition, at some point after Plaintiff was released from the WCJ, he allegedly found an orange Westchester County Department of Correction uniform hanging from the doorknob on the front door of his home.  (*Id.*, 113:9-24; 114:20-25; 117:3-5; Decl. Opp'n Defs.' Mot. Summ. J. ("Deem Decl.") (Docket No. 461) Exs. 8a, 8b).  Plaintiff avers that racial slurs were written on the uniform in black marker, but, at his deposition, he was unable to identify who wrote the slurs or who left the uniform at his home.  (Dilworth Dep. 114:9-19; 117:6-21).  Plaintiff did testify that the person who left the uniform on his door had driven a red car, and that some months later, while Plaintiff was at a bar, he saw a Correctional Officer whom he recognized from the WCJ leave the bar and approach that same red car.  (*Id.* 124:3-12; 126:9-11; 127:2-11).

## PROCEDURAL HISTORY

The procedural history of this case is lengthy and has largely been recounted by Magistrate Judge Gorenstein elsewhere (*see Dilworth v. Goldberg*, No. 10-CV-2224 (JMF) (GWG), 2013 WL 5745989, at *1 (S.D.N.Y. Oct. 23, 2013) (*Dilworth II*) (Docket No. 379); *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 438 (S.D.N.Y. 2012) (*Dilworth I*) (Docket No. 334)), so the Court will summarize it only briefly here.  On May 22, 2009, Plaintiff filed a *pro se* complaint, under a separate docket number, alleging mistreatment at the WCJ.  (*See* Docket No. 2, 09-CV-4810).  In September 2009, Plaintiff retained counsel, and voluntarily dismissed his *pro se* complaint under that docket number.  (Docket No. 8, 09-CV-4810).  On March 15, 2010, Plaintiff and Patricia Dilworth filed the instant action.  (Docket No. 2).  They amended their complaint for the first time on April 2, 2010, and, after Magistrate Judge Gorenstein granted them leave to file a second amended complaint, they did so on September 17, 2010, naming over

fifty defendants.  (Docket Nos. 133-134).  Defendants filed five separate motions to dismiss

(Docket Nos. 167, 267, 271, 173, 256), and, on September 30, 2011, the Honorable Richard J.

Holwell — to whom this case was previously assigned — adopted the report and

recommendation of Magistrate Judge Gorenstein, dismissing the claims against many

Defendants, but allowing some claims against certain Defendants affiliated with Westchester

County to proceed (*see* Docket No. 296).

On January 24, 2012, Plaintiff and Patricia Dilworth moved to amend the Second

Amended Complaint (Docket No. 317).  Magistrate Judge Gorenstein granted the motion in part

and denied it in part on September 13, 2012.  *Dilworth I*, 914 F. Supp. 2d 433.  Plaintiff and

Patricia Dilworth subsequently filed a Third Amended Complaint (the "TAC").  (Docket No.

340).  Magistrate Judge Gorenstein held a pretrial conference the following month (Docket No.

337), setting a schedule for discovery (Docket No. 336), but staying all municipal-liability claims

under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Docket No. 339), agreeing

with Defense counsel that "if [Plaintiff] can't prove . . . deliberate indifference to his medical

needs . . . and if there's no underlying constitutional violation, there's no *Monell*."  (Docket No.

337, at 9:4-10).  On April 4, 2013, Michael Deem, who until that point had represented both

Plaintiff and Patricia Dilworth, withdrew as counsel for Patricia Dilworth, who has since

proceeded in this matter *pro se*.  (Docket No. 354).  Subsequently, on August 2, 2013, Plaintiffs

filed a fourth motion to amend the complaint, but Magistrate Judge Gorenstein denied that

motion.  *Dilworth II*, 2013 WL 5745989, at *4 (S.D.N.Y. Oct. 23, 2013).  Accordingly, the

operative complaint is the TAC.  (Docket No. 340).

On December 20, 2013 — after fact discovery had closed — Plaintiff sought additional

discovery, arguing that the need for the requested documents had not arisen until the close of the

discovery period.  (Docket No. 413).  In an order dated December 26, 2013, Magistrate Judge

Gorenstein denied Plaintiff's requests and also ordered Plaintiff to appear for two hours of

additional examination by Defendants' psychiatric expert, pursuant to Rule 35 of the Federal

Rules of Civil Procedure.  (Docket No. 420).  Four days later, Plaintiff objected to that ruling.

(Docket No. 423).  Thereafter, Defendants filed the instant motion for summary judgment,

seeking dismissal of the TAC in its entirety.  (Docket No. 440).  Pursuant to this Court's Local

Rule 56.2, Defendants served Patricia Dilworth with notice of the motion (Docket No. 443), but

she failed to submit any opposition papers.  Plaintiff, meanwhile, applied for and was granted an

extension to oppose the motion (Docket Nos. 445-46), but as noted failed to submit opposition

papers by the Court-extended deadline.  Plaintiff finally submitted his opposition papers ten days

late.[4]  (Docket Nos. 461-62).

Notably, in addition to being late, Plaintiff's papers largely fail to address Defendants'

arguments except in the vaguest and most conclusory terms.[5]  In fact, Plaintiff's summary

judgment papers are so inadequate and so unresponsive to the points that Defendants raise that

the Court would be on firm ground in deeming all Plaintiff's claims abandoned and summarily

dismissing the entire case.  *See Di Giovanna v. Beth Isr. Med. Ctr.*, 651 F. Supp. 2d 193, 208

---

[4]      After Plaintiff submitted his opposition papers late, the Court ordered him to show cause
why the Court should not strike the opposition memoranda or impose other sanctions, and
required Plaintiff's counsel to submit an affidavit explaining the tardiness of his submissions and
his failure to seek the Court's leave to file them late.  (Docket No. 463).  Plaintiff's counsel's
explanation was essentially that he had misread a Court Order and was overwhelmed by work on
other matters.  (*See* Docket No. 464).  Notwithstanding this unsatisfactory explanation, the Court
ultimately declined to strike the submissions or impose other sanctions against Plaintiff or his
counsel, instead warning Plaintiff that continuing failures to abide by the Court's deadlines "will
result in sanctions being imposed on Plaintiff, Plaintiff's counsel, or both."  (Docket No. 465).

[5]      Perhaps tellingly, Plaintiff refers to the instant motion for summary judgment as a motion
to dismiss.  (*See* Pl.'s Opp'n Mem. 2-3 ("[T]he defendants' *motion to dismiss* . . . must be
denied." (emphasis added)).

(S.D.N.Y. 2009).  Additionally, Plaintiff's Rule 56.1 Counterstatement provides almost no

specific citations to the record, in contravention of Local Rule 56.1.  *See* S.D.N.Y. Local Civ. R.

56.1(d) ("Each statement by the . . . opponent pursuant to Rule 56.1(a) and (b), including each

statement controverting any statement of material fact, must be followed by citation to evidence .

. . .").  Those failings have essentially forced the Court to sift through the record and make

Plaintiff's case for him.  Finally, although not necessarily relevant to the instant motion for

summary judgment, the Court has serious doubts about the credibility of Plaintiff's testimony,

given that Plaintiff was unable to provide any details about many Defendants in this action (*see*

Defs.' Rule 56.1 Statement ¶¶ 42-63), not to mention the fact that the video of the slip and fall at

the heart of the case clearly shows Plaintiff walking away from the scene under his own power,

apparently unharmed.  Notwithstanding these failings and reasons to be skeptical, however, the

Court will consider the motion for summary judgment on its merits.

## MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standards

Summary judgment is appropriate when the record demonstrates that there are no genuine

disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial burden of informing the court of the basis for its motion and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

that demonstrate the absence of a genuine dispute regarding any material fact.  *See* Fed. R. Civ.

P. 56(c); *Celotex*, 477 U.S. at 322.  In ruling on a motion for summary judgment, all evidence

must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

      The motion for summary judgment is directed not only at the claims of Dilworth, who has opposed the motion and is represented by counsel, but also those of Patricia Dilworth, who has not opposed the motion and is proceeding *pro se*. When a summary judgment motion is brought against a *pro se* litigant, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly . . . ."). That special solicitude is not unlimited, however, and it does not "relieve [a] plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Additionally, the fact that a summary judgment motion is unopposed "does not [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam); *see also Vt. Teddy Bear*, 373 F.3d at 224. Instead, the Court must (1) determine what material facts, if any, are disputed in the record presented on the motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party. See *Champion*, 76 F.3d at 486; *Allen v. Comprehensive*

*Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001).  With that, the Court turns to the motion's merits.

**B.      Deliberate Indifference**

Plaintiff's deliberate-indifference claims center on the medical treatment that he received at the WCJ after his slip and fall.  In particular, Plaintiff testified that Dr. Goldberg provided him with inadequate treatment by failing to send him to the hospital after the accident (Dilworth Dep. 99:6-10); by refusing to order him new crutches (*id.* at 137:22-138:6); by causing him pain during an examination (*id.* at 133:24-134:7); and by requiring him to walk without his crutches, thereby causing him to fall (*id.* at 135:21-137:12).  In addition, Plaintiff brings deliberate indifference claims against Defendants Jean Kadel and June Yozzo for failing to report Dr. Goldberg's inadequate medical treatment (*id.* at 164:4-7), failing to intervene during the examination when Dr. Goldberg hurt Plaintiff (*id.* at 156:16-159:14), and instructing Plaintiff not to submit additional sick-call slips (*id.* at 159:19-25).

All of these claims, however, fail as a matter of law.  "[T]he Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state." *Burks v. Nassau Cnty. Sheriff's Dep't*, 288 F. Supp. 2d 298, 301-02 (E.D.N.Y. 2003).  "[T]he standard for analyzing a pre-trial detainee's Fourteenth Amendment claim," however, "is the same as the Eighth Amendment standard."  *Id.* (internal quotation marks omitted).  To make out such a case, a plaintiff must show that the alleged inadequacy is, objectively speaking, "sufficiently serious," and that the defendant acted with "a mental state equivalent to subjective recklessness."  *Sledge v. Fein*, No. 11-CV-7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (internal quotation marks omitted).

In the main, Plaintiff's claims against Dr. Goldberg constitute "mere disagreement over the proper treatment," which does not give rise to an Eighth Amendment claim. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). In addition, Plaintiff's claims that he suffered temporary pain during an examination and that he fell after Dr. Goldberg instructed him to walk without crutches are not sufficiently serious for purposes of an Eighth Amendment claim. *See Chatin v. Artuz*, 28 Fed. App'x 9, 11 (2d Cir. 2001) (summary order) (holding that allegations that "a nurse failed to provide [plaintiff] immediately with crutches" did not rise to the level of deliberate indifference); *Wandell v. Koenigsmann*, No. 99-CV-8652 (WHP), 2000 WL 1036030, at *4 (S.D.N.Y. July 27, 2000) (collecting cases for the proposition that "[w]hether an injured prisoner should be provided crutches is a medical judgment as to the appropriate course of treatment, and disagreement with that decision is not actionable under the Eighth Amendment"). Finally, Plaintiff submits no evidence that any of the Defendants — including Dr. Goldberg, Kadel, and Yozzo — acted with a sufficiently culpable state of mind. To the contrary, the record indicates that during the approximately nine months between Plaintiff's fall and his release from the WCJ, Plaintiff received extensive medical treatment at the WCJ, including nearly fifty appointments at the patient clinic, an X-ray exam, and an MRI. (Defs.' Rule 56.1 Statement ¶¶ 71, 76; Pl.'s Rule 56.1 Statement ¶ 71; Defs.' Rule 56.1 Statement, Exs. S, T). *See also Buffaloe v. Fein*, 12-CV-9469 (AJP), 2013 WL 5815371, at *8 (S.D.N.Y. Oct. 24, 2013) (finding no deliberate indifference where plaintiff's medical records "demonstrate . . . that doctors were monitoring [plaintiff's] condition"), *adopted by Buffaloe v. Fein*, 12-CV-9469 (GBD), 2014 WL 1224446 (S.D.N.Y. Mar. 20, 2014). Accordingly, Plaintiff's deliberate-indifference claims must be and are dismissed.

## C.      Race-Based Denial of Medical Treatment

Plaintiff's second cause of action is labeled a claim for "Race Motivated Denial of

Medical Treatment," against Dr. Goldberg and Alvin Rogers.  (TAC 76).  The Court understands

the claim to be that those Defendants violated Plaintiff's rights under the Equal Protection Clause

of the Fourteenth Amendment.  To prove such a violation, Plaintiff "must prove purposeful

discrimination directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050,

1057 (2d Cir. 1995) (citation omitted).  Plaintiff's evidence, however, is wholly insufficient.  At

most, Plaintiff identifies a somewhat distasteful comment by Dr. Goldberg (*see* Dilworth Dep.

283:2 (telling Plaintiff "[y]ou people got to have soul,")), but Plaintiff presents no evidence that

the medical care that he received was inferior to that received by detainees of other races.

Accordingly, Plaintiff's second cause of action must be and is dismissed.  *See, e.g.*, *Giano*, 54

F.3d at 1057 ("[Plaintiff] presents no evidence that the policy discriminated against a particular

class of inmates. . . . Thus, [Plaintiff's] equal protection claim fails.").

## D.      Excessive Force and Failure to Intervene

The Court now addresses Plaintiff's third cause of action, alleging excessive force, which

he brings against Defendants Rogers and Jeremiah Tejeda.  As with his deliberate-indifference

claims, Plaintiff's excessive-force claims are analyzed under the Due Process Clause of the

Fourteenth Amendment, but the analysis is practically the same as is used to analyze claims by

convicted inmates under the Eighth Amendment.  *See, e.g.*, *Tavares v. City of New York*, No. 08-

CV-3782 (PAE), 2011 WL 5877548, at *3 (S.D.N.Y. Nov. 23, 2011).  To establish an excessive-

force claim, Plaintiff must satisfy a two-part inquiry focusing on both the objective and

subjective nature of the conduct at issue.  First, Plaintiff must show that the use of force is

"objectively sufficiently serious or harmful enough to be actionable."  *United States v. Walsh*,

194 F.3d 37, 50 (2d Cir. 1999); *see also Cunningham v. Rodriguez*, No. 01-CV-1123 (DC), 2002

WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002).  Second, Plaintiff must establish that the

defendant acted with a "sufficiently culpable state of mind, shown by actions characterized by

wantonness." *Walsh*, 194 F.3d at 50 (internal quotation marks omitted).

     Plaintiff fails to satisfy the first prong of the inquiry.  Plaintiff testified that Rogers

instructed him to strip off his clothes and remain standing without his crutches for approximately

fifteen to twenty minutes (Dilworth Dep. 171:8-173:10), and that Rogers put pressure on his

back using Rogers's elbow, and instructed other officers, including Tejeda, to do the same (*id.* at

173:15-176:8).  "The Eighth Amendment's prohibition of cruel and unusual punishments,"

however, "necessarily excludes from constitutional recognition *de minimis* uses of physical

force." *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992) (internal quotation marks omitted).  Here,

Plaintiff provides no evidence that any of Defendants' alleged actions caused him any lasting

harm.  Although the extent of injury is not dispositive, it is nevertheless relevant, and "an inmate

who complains of a push or shove that causes no discernible injury almost certainly fails to state

a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *see also, e.g.*, *Robison

v. Via*, 821 F.2d 913, 923 (2d Cir. 1987) (holding that the district court should have dismissed a

claim where allegations did not "come[] close to describing force that was injurious, malicious,

or excessive"); *Tavares v. City of New York*, No. 08-CV-3782 (JCF), 2011 WL 5877550, at *4-7

(S.D.N.Y. Oct. 17, 2011) (recommending dismissal of an excessive-force claim where the

plaintiff failed to show an "actionable injury"), *adopted by Tavares*, 2011 WL 5877548.

Accordingly, Plaintiff's excessive-force claims are dismissed.  It follows that his fourth claim —

against Defendant Keith Wyatt for "Failure to Intercede in the Use of Excessive Force" (TAC

¶ 195) — fails as well.  *See, e.g.*, *Foy v. City of New York*, No. 03-CV-7318 (HB), 2004 WL

2033074, at *3 ("[T]here can be no failure to intervene where there was no constitutional

violation.").

## E.        Right to Privacy

Next, Plaintiff alleges that Defendants Rogers, Tejeda, and Wyatt violated his "right to

privacy" by reading his "personal diaries, legal work product, legal documents, disclosing his

highly sensitive medical condition . . . , and arbitrarily compelling him to strip naked in full view

of his entire housing area on two separate occasions."  (TAC ¶ 198).  Quite simply, there is no

evidence in the record to support any of those claims.  Nowhere in Plaintiff's deposition does he

mention any officers reading his personal documents and, although he states that Defendant

Rogers ordered him to strip on multiple occasions, the Supreme Court has noted that "courts

should ordinarily defer to [the] expert judgment [of prison officials] in such matters," unless

there is "substantial evidence in the record to indicate that the officials have exaggerated their

response to" security considerations.  *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510,

1517 (2012).  No such evidence exists here.  Accordingly, the privacy claims are without merit

and are hereby dismissed.

## F.        Religious Exercise

Plaintiff also brings claims against several Defendants for interfering with his right to

freely exercise his religious beliefs.  To establish a free-exercise claim, Plaintiff must show that

the disputed conduct "substantially burdens his sincerely held religious beliefs."  *Salahuddin v.

Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006); *see also LaRock v. Amato*, No. 9:12-CV-503

(TJM), 2013 WL 5466410, at *8-9 (N.D.N.Y. Sept. 30, 2013) (applying First Amendment

freedom-of-religion protections to pretrial detainee); *Nolley v. Cnty. of Erie*, No. 07-CV-488S

(WMS), 2008 WL 859165, at *5-6 (W.D.N.Y. Mar. 31, 2008) (same).  Defendants then "bear the

relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 75. As with any claim brought under Section 1983, Plaintiff must provide evidence of the Defendants' personal involvement in the alleged constitutional deprivation. *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

Plaintiff provides evidence of personal involvement in the alleged deprivation of free religious exercise with respect to only two Defendants: Patrick Garrett and Rogers. Specifically, Plaintiff testified that, "a couple of times," when he was approaching the chapel to attend services on a Sunday, Defendant Garrett told Plaintiff to "turn around and go back," that there were "vultures flying over the top of [Plaintiff's] head," and instructed Plaintiff to "[t]ake [his] black ass back to the dorm." (Dilworth Dep., at 194:19-195:13). Plaintiff also testified that other officers informed him that a notation had been made "in the logbook" that he was not allowed to attend church services, and that when Plaintiff said to Rogers "I would like to go to church," Rogers responded by saying "You are not going, Dilworth" — although Plaintiff did not specify how often this occurred. (*Id.* at 222:10-13, 223:6-15, 224:6-10). Plaintiff also testified that Defendant Rogers took his Bible. (*Id.* at 226:7-17).

Significantly, however, the operative Complaint does not include any religious-exercise claim against Garrett. (TAC ¶ 201). Whether the claim should proceed against Rogers — the one Defendant who Plaintiff claims, and testified, was personally involved — is a close question. Courts in this circuit have held that missing two religious services does not constitute a substantial burden on an inmate's right to practice his religion. *See, e.g.*, *Shapiro v. Cmty. First Servs.*, No. 11-CV-4061 (KAM), 2014 WL 1276479, at *11 (E.D.N.Y. Mar. 27, 2014) ("[N]ot permitting a prisoner to attend two religious services is a *de minimis*, or insubstantial, burden on

an inmate's ability to freely exercise his religion." (internal quotation marks omitted)).  Drawing

all inferences in Plaintiff's favor, however, a reasonable jury could find that Plaintiff was *never*

permitted to attend religious services; if true, that could indeed constitute a constitutional

violation, *see Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) ("It is well established

that prisoners have a constitutional right to participate in congregate religious services.").

Defendants offer no penological justification — legitimate or not — for that deprivation.

Further, Defendants offer no explanation as to why Rogers confiscated Plaintiff's Bible, which

could also form the basis for a free exercise claim.  *See, e.g.*, *Shepherd v. Powers*, No. 11-CV-

6860 (LTS), 2012 WL 4477241, at *8 (S.D.N.Y. Sept. 27, 2012) (holding that plaintiff stated a

free exercise claim where he alleged that he was denied access to his personal Bible and Sunday

group worship).  Accordingly, Plaintiff's free exercise claim survives, but only with respect to

Defendant Rogers.

## G.    Unconstitutional Conditions of Confinement

Next, the Court turns to Plaintiff's unconstitutional conditions claim.  For a pretrial

detainee to establish a claim for unconstitutional conditions of confinement, he must show that

"the conditions amount to 'punishment' without due process in violation of the Fourteenth

Amendment."  *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981).  "To state a[] . . . Fourteenth

Amendment claim based on conditions of confinement, a detainee must allege that:

(1) objectively, the deprivation the detainee suffered was sufficiently serious that he was denied

the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official

acted with a sufficiently culpable state of mind, such as deliberate indifference to detainee health

or safety."  *Best v. N.Y.C. Dep't of Corr.*, No. 12-CV-7028 (KMK), 2014 WL 1612984, at *13

(S.D.N.Y. Mar. 31, 2014) (internal quotation marks and alterations omitted).

Having reviewed the record, the Court finds no evidence that Plaintiff was denied "the minimal civilized measure of life's necessities."  In fact, the TAC fails to identify any specific deprivations that form the basis for this claim and instead makes the vague allegation that some Defendants "subjected [Plaintiff] to unconstitutional conditions of confinement through the cumulative effects of their acts and omissions."  (TAC ¶ 204).  Plaintiff's opposition memorandum of law sheds no light on the matter either, and, as Defendants' memorandum of law amply demonstrates, nothing in Plaintiff's deposition suggests that any particular Defendant should be held liable for a conditions-of-confinement claim.  (Mem. Law. Supp. Defs.' Mot. Summ. J. ("Defs.' Mem.") (Docket No. 442) 23-25).  The claim is therefore meritless and hereby dismissed.

## H.      Racial Discrimination

The racial discrimination claims set forth in the TAC — on behalf of both Plaintiff and Patricia Dilworth (TAC ¶¶ 207-08) — must also be dismissed.  The primary basis for those claims appears to be the incident when, after Plaintiff had been released from the WCJ, a prison uniform was allegedly left in front of Plaintiffs' home.  (Dilworth Dep. 113:9-117:21; Defs.' Rule 56.1 Statement, Ex. L ("Patricia Dilworth Dep.") 32:6-33:5; Deem Decl., Exs. 8a, 8b).  Plaintiffs, however, provide no evidence as to who placed the uniform there (and their accounts of how the uniform was discovered differ in material respects (*see* Defs.' Mem. 25-26)).  Accordingly, they have not, and cannot, establish the personal involvement of any Defendant required to establish a Section 1983 claim.  *See Spavone*, 719 F.3d at 135.  To the extent that Dilworth's discrimination claims are also predicated on Defendant Patrick having instructed him to "get [his] black ass back into the dorm" while at WCJ (Dilworth Dep. 195:12-13), they must also be dismissed, as "[v]erbal threats or harassment, unless accompanied by physical force or

the present ability to effectuate the threat, are not actionable under § 1983." *Montero v. Crusie*,
153 F. Supp. 2d 368, 376 (S.D.N.Y. 2001); *see also Amaker v. Foley*, No. 94-CV-843E (SR),
2003 WL 21383010, at *4 (W.D.N.Y. Feb. 18, 2003) ("[B]ecause plaintiff has not alleged that he
was ever physically threatened . . .  without more, his allegations of verbal threats, abusive
language and racial epithets cannot from the basis of a section 1983 claim.").  Plaintiffs' racial
discrimination claims are therefore dismissed.

## I.      Retaliation

The TAC alleges that numerous Defendants retaliated against Plaintiff in various ways —
including by "threatening physical harm, threatening the lives of his children, [and] denying him
the right to practice his religion" for "having filed a federal lawsuit."  (TAC ¶ 214).  The only
evidence in the record to support a retaliation claim, however, is Plaintiff's deposition testimony
that Defendant Rogers prevented him from receiving proper medical care because he was
"pursuing a lawsuit."  (Dilworth Dep. 155:13-23).  That statement, however, is entirely
conclusory, and Plaintiff fails to provide any evidence that his commencement of legal
proceedings "was a substantial or motivating factor" behind Defendant Rogers's — or any other
Defendant's — allegedly retaliatory acts.  *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.
1996).  Accordingly, Plaintiff's retaliation claims must be and are dismissed.

## J.      Due Process

Plaintiff's due process claim appears to be based on the alleged confiscation of his Bible,
some prayer books, and family pictures, as well as Defendants' alleged refusal to accept
Plaintiff's grievances regarding those confiscations.  (TAC ¶ 151(f), 218).  The claim fails,
however, because "[a]n unauthorized intentional deprivation of property by a state employee
does not constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available."

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  It is well established that New York offers such a

remedy through Article 78 proceedings.  *See Kindell v. N.Y. State Dep't of Corr.*, No. 12-CV-

4579 (LGS), 2013 WL 6164439, at *2 (S.D.N.Y. Nov. 22, 2013).

## K.    Supervisory Liability and *Monell* Claims

In light of the foregoing, Plaintiff's supervisory-liability and municipal-liability claims —

his only other claims under federal law — must also be dismissed.  In the absence of an

underlying constitutional violation, a plaintiff cannot state a claim for supervisory liability or a

claim under *Monell*.  *See Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011)

("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state

a claim for § 1983 supervisor liability."); *Schultz v. Inc. Vill. of Bellport*, 479 Fed. App'x 358,

360 (2d Cir. 2012) (summary order) ("Because [Plaintiff] was unable to establish an underlying

violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well.").  Here,

for the reasons stated above, the only claim that survives Defendants' motion for summary

judgment is Plaintiff's religious-exercise claim against Defendant Rogers.  As to that claim, the

record contains no allegations, let alone evidence, that any Defendant was personally involved in

a way that could support a finding of supervisory liability.  *See, e.g.*, *Colon*, 58 F.3d at 873

(discussing ways in which a plaintiff may show personal involvement for purposes of

establishing supervisory liability); *see also, e.g.*, *Grullon v. City of New Haven*, 720 F.3d 133,

139 (2d Cir. 2013) (noting that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), "may have heightened the requirements for showing a supervisor's personal involvement

with respect to certain constitutional violations" beyond those set forth in *Colon*).  Similarly,

Plaintiff makes no allegation, and submits no evidence, that Defendant Rogers's actions were

undertaken pursuant to any "municipal policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

**L.      State Law Claims**

Finally, the TAC also includes four state law claims: a claim by Plaintiff for negligence against Westchester County for "failing to maintain the hallway in the Westchester County Jail free of hazards on December 16, 2008" (TAC ¶ 228); a claim by Plaintiff for "medical negligence" against Westchester County and Westchester County Health Care Corporation for "denying and delaying medical care from December 16, 2008 to September 23, 2009" (TAC ¶ 231); a claim by Plaintiff for breach of contract (TAC ¶¶ 233-34); and a claim by Patricia Dilworth for loss of consortium (TAC ¶ 236-37).   In his memorandum of law, Plaintiff unambiguously withdraws his claim for breach of contract.  (Pl.'s Opp'n Mem. 4).  The remaining claims all fail as a matter of law.

Plaintiff's first claim — arising from his slip and fall on December 16, 2008 — fails because he did not comply with New York General Municipal Law Sections 50-e and 50-h. (Def.'s Mem. 31-32; Reply Mem. Supp. Defs.' Mot. Summ. J. ("Def.'s Reply Mem.") (Docket No. 471) 9).  Section 50-e of the General Municipal Law requires a plaintiff bringing tort claims against a municipality to serve a notice of claim on the municipality within ninety days of when the claim arose, and section 50-h grants the municipality the right to demand an oral examination of the plaintiff.   N.Y. Gen. Mun. Law §§ 50-e, 50-h; *see also Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *Simon v. City of New York*, No. 09-CV-1302, 2011 WL 317975, at *15 (E.D.N.Y. Jan. 3, 2011).  Failure to comply with these requirements requires dismissal of the cause of action.  *See Hardy*, 164 F.3d at 794; *Kemp v. Cnty. of Suffolk*, 878 N.Y.S.2d 135, 136 (2d Dep't 2009).  Here, Plaintiff argues that he complied with Sections 50-e

and 50-h by attending a hearing on August 19, 2009, for which he filed a notice of claim on May 20, 2009.  (Pl.'s Opp'n Mem. 3; *see also* Defs.' Rule 56.1 Statement, Exs. B, C).  That notice of claim, however, was filed more than ninety days after his fall, however, so it cannot serve as the basis for Plaintiff's compliance with Section 50-e with respect to Plaintiff's first negligence claim.  (*See also* Docket No. 296, at 8).

Plaintiff may have complied with Sections 50-e and 50-h with respect to the second state law claim — for "medical negligence" against Westchester County and WCHCC — but that claim fails for other reasons.  First, it appears that Plaintiff may have abandoned the claim, as Plaintiff states in his opposition memorandum of law that "plaintiff does not have pending claims for medical malpractice."  (Pl.'s Opp'n Mem. 3).  In any event, the claim must be dismissed because Plaintiff offers no evidence in support of a claim for medical malpractice or negligence. *See E'Elia v. Menorah Home & Hosp. for Aged & Infirm*, 859 N.Y.S.2d 224, 226 (2d Dep't 2008) (noting that "medical malpractice is simply a form of negligence," and that "[g]enerally, a claim will be deemed to sound in medical malpractice when the challenged conduct constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (internal quotation marks omitted)).  Put simply, there is no evidence in the record indicating that a physician "deviated or departed from accepted community standards of practice," as is required for a claim of medical malpractice.  *Stukas v. Streiter*, 918 N.Y.S.2d 176, 180 (2d Dep't 2011).

Finally, as noted, Patricia Dilworth brings a claim for loss of consortium, alleging that she was deprived of the "comfort, enjoyment, society and services of her spouse" after his release from WCJ on September 23, 2009.  (TAC ¶ 237).  Patricia Dilworth, however, submits no evidence in support of the claim, which is designed to "compensate for the injury to the

marital relationship and to the interest of the injured party's spouse in the continuance of a

healthy and happy marital life." *Rangolan v. Cnty. of Nassau*, 370 F.3d 239, 248 (2d Cir. 2004)

(internal quotation marks and alterations omitted).  In fact, as noted, Patricia Dilworth does not

oppose the summary judgment motion at all, despite the fact that she was served with

Defendants' motion papers as well as the required notice that, in opposing the motion, she was

required to submit evidence countering the facts asserted by Defendants and raising specific facts

to support her claims.  (*See* Docket Nos. 440-43).  Although her failure to oppose, by itself, does

not warrant dismissal of her claim, *see Champion*, 76 F.3d at 486, the Court concludes upon

review of the record that Defendants are entitled to dismissal of the claim.

### DISCOVERY RULING OBJECTIONS

Next, the Court turns to Plaintiff's objections to Magistrate Judge Gorenstein's December

26, 2013 discovery rulings.  (*See* Docket No. 420).  Plaintiff objects to the rulings in four ways.

First, Plaintiff contends that Magistrate Judge Gorenstein erred by denying his request to

subpoena the telephone and billing records of Dr. Stuart Kleinman, Defendants' expert who had

conducted a psychological examination of Plaintiff pursuant to Rule 35 of the Federal Rules of

Civil Procedure.  (Plaintiff's Objections Rulings Hon. Gabriel W. Gorenstein, U.S.M.J. Dated

Dec. 26, 2013 ("Pl.'s Objections") (Docket No. 423) 7-9).  Second, Plaintiff objects to

Magistrate Judge Gorenstein's denial of a request for further discovery regarding private

investigators allegedly hired by Defendants to follow Plaintiff.  (*Id.* 9-11).  Third, Plaintiff argues

that Magistrate Judge Gorenstein should not have denied Plaintiff's request for discovery

regarding telephone conversations he had with employees of the Westchester County

Department of Social Services HEAP Program, a program that assists low-income residents with

home heating costs.  (*Id.* 11-12).  Finally, Plaintiff argues that he should not have been ordered to

submit to an additional two hours of examination by Dr. Kleinman, as Magistrate Judge

Gorenstein ordered him to do.  (*Id.* 12-14).

All of Plaintiff's objections are without merit.  Where a magistrate judge has ruled on a

nondispositive pretrial matter, "[t]he district judge . . . must . . . modify or set aside any part of

the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  A finding is

"clearly erroneous" if "the reviewing court . . . is left with the definite and firm conviction that a

mistake has been committed," and is "contrary to law" if it "fails to apply to or misapplies

relevant statutes, case law, or rules of procedure."  *MASTR Adjustable Rate Mortgs. Trust v. UBS

Real Estate Sec. Inc.*, No. 12-CV-7322 (HB), 2013 WL 6840282, at *1 (S.D.N.Y. Dec. 27, 2013)

(internal quotation marks omitted).  "A party seeking to overturn a discovery order therefore

bears a heavy burden," and reversal of a magistrate's decision is appropriate "only if [the

magistrate's] discretion is abused."  *Id.* (internal quotation marks omitted).  Plaintiff comes

nowhere close to meeting this burden.

With respect to Plaintiff's request to subpoena Dr. Kleinman's telephone and billing

records, "[s]ubpoenas issued under Rule 45 of the Federal Rules of Civil Procedure are subject to

Rule 26(b)(1)'s overriding relevance requirement."  *During v. City Univ. of N.Y.*, No. 05-CV-

6992 (RCC), 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006).  Plaintiff argues that such

records are necessary to impeach the effectiveness of Dr. Kleinman's examination, as well as any

opinions that he may offer (Pl.'s Objections 7-9), but Magistrate Judge Gorenstein's ruling that

the "potential value of these records does not warrant further pursuit of this matter" was not

clearly erroneous (Docket No. 420 ¶ 4).  Plaintiff submits no evidence suggesting that any

telephone calls Dr. Kleinman received during the examination "impair[ed] its effectiveness [or]

render[ed] it adversarial."  *Hodge v. City of Long Beach*, No. 02-CV-5851 (AKT), 2007 WL

2891266, at *6 (E.D.N.Y. Sept. 28, 2007). In any event, it is not clear how telephone or billing records could possibly shed light on the matter.

Second, Plaintiff's objection to the order denying further discovery regarding private investigators allegedly hired by Defendants is without merit. As Plaintiff admits, Defendants had previously represented to the Court that no such private investigators exist, and the fact that Dr. Kleinman told Plaintiff that he "see[s]" that Plaintiff rarely travels outside of Ossining, New York, does not indicate that Defendants' representation was inaccurate.

Third, Magistrate Judge Gorenstein's order denying Plaintiff's request for records regarding his "HEAP" benefits is not clearly erroneous or contrary to law. Such records go far beyond the scope of relevant discovery, *see* Fed. R. Civ. P. 26(b)(1), as there is no claim in the TAC regarding Plaintiff's receipt of such benefits.

Finally, to the extent that Plaintiff's objection to Magistrate Judge Gorenstein's ruling that Plaintiff undergo an additional two hours of examination is not moot, the objection is rejected as well. It was well within Magistrate Judge Gorenstein's discretion to decide that additional time for the examination was warranted, based on the representation in Defendants' December 20, 2013 letter that the examination revealed that Plaintiff has a "very complicated mental history" and that Plaintiff described "in great detail numerous stressful or traumatic events related in some way to his mental health" during the examination (Decl. Supp. Pl.'s Objections Rulings Hon. Gabriel W. Gorenstein, U.S.M.J. Dated Dec. 26, 2013 (Docket No. 424), Ex. 2); *see also Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 663-664 & n.5 (D. Kan. 2011) (noting that Federal Rule of Civil Procedure 35(a)(1) "grants the court discretionary authority to order a party to submit to a physical or mental examination if the party's mental or physical condition is in controversy," and ordering a two-day examination that

25

"may be extended, depending on what develops during the examination"). The Court also rejects Plaintiff's request to have the remainder of the examination recorded (Pl.'s Objections 14), as Plaintiff has failed "to show special circumstances for the need to have a[] court reporter present at the examination." *E.E.O.C. v. Grief Bros. Corp.*, 218 F.R.D. 59, 64 (W.D.N.Y. 2003); *see also Tomlin v. Holecek*, 150 F.R.D. 628, 631 (D. Minn. 1993) (finding a tape-recording of a Rule 35 examination "inconsistent with the underlying purposes of a Rule 35 examination").

## CONCLUSION

In summary, Defendants' motion for summary judgment is GRANTED on all counts except for Dilworth's religious exercise claim against Defendant Rogers. In addition, Plaintiff's objections to Magistrate Judge Gorenstein's discovery order are DENIED.

Within **thirty days** of this Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3). The parties shall also follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.

If this action is to be tried before a jury, joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Fed. R. Civ. P. 51(a)(2)(A). If this action is to be tried to the Court, proposed findings of fact and conclusions of law shall be filed on or before the Joint Pretrial Order due date in accordance with the Court's Individual Rules and Practices. Unless the Court orders otherwise for good cause shown, the parties shall be ready for trial two weeks after the Joint Pretrial Order is filed.

Finally, if the parties are interested in a settlement conference, they shall contact the chambers of Magistrate Judge Gorenstein immediately and so advise the Court by joint letter.

The Clerk of the Court is directed to terminate Docket No. 440 and to mail a copy of this Order to Patricia Dilworth.

SO ORDERED.

Date:   August 1, 2014
New York, New York

JESSE M. FURMAN
United States District Judge